UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| UNITED STATES OF AMERICA, STATE OF ARKANSAS, STATE OF LOUISIANA, and STATE OF TEXAS | CIVIL ACTION NO.: 17-CV-01667 |
|---|---|
| ex rel. TIFFANY KAGEBEIN | |
| VERSUS | JUDGE ELIZABETH FOOTE |
| ALLEGIANCE HEALTH MANAGEMENT, INC., ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Relator Tiffany Kagebein ("Relator") brings this *qui tam* action on behalf of the United States, the State of Arkansas, the State of Louisiana, and the State of Texas against Allegiance Health Management, Inc., Allegiance Healthcare, LLC, and Allegiance Hospital of North Little Rock, LLC d/b/a North Metro Medical Center ("North Metro") for alleged violations of the Federal False Claims Act, 31 U.S.C. §§ 3729–3733 ("FCA"). Now pending before the Court is Defendants' Motion to Dismiss for Failure to State a Claim upon Which Relief can be Granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). [Record Document 15]. Kagebein has filed an Opposition. [Record Document 17]. Defendants have filed a Reply. [Record Document 18]. For the reasons discussed below, the motion is **DENIED**.

## FACTUAL BACKGROUND

From January of 2016 until January of 2017, Relator worked for North Metro as the Program Director for the Transitions Unit, the hospital's Geriatric Behavioral Unit. Record Document 1, ¶ 6. Relator asserts that her employment at North Metro was terminated after she raised concerns to her superiors that Defendants were submitting fraudulent claims to

1

Government-funded healthcare programs for geriatric psychiatry services, in violation of the FCA and similar state laws in Arkansas, Louisiana, and Texas. *Id.* at ¶s 1 & 6. According to Relator, Defendants improperly admitted and retained patients in order to maintain an elevated level of patient occupancy (*id.* at ¶s 44–47) and billed for services that were not rendered and/or unreasonable or unnecessary (*id.* at ¶s 48–59). Relator alleges that this conduct exposed patients to harm. *Id.* at ¶ 60. Relator claims that her employment at North Metro was terminated by the hospital's CEO Bill Bledsoe ("Bledsoe") because she "repeatedly raised her concerns to him and others regarding the improper conduct." *Id.* at ¶ 64. The United States and the States of Arkansas, Louisiana, and Texas declined to intervene in this action. Record Document 4. Relator voluntarily dismissed all of her claims against Defendants, with the exception of her retaliation claim under § 3730(h)(1) of the FCA. Record Documents 8 & 14. The United States and the States of Louisiana, Arkansas, and Texas consented to the partial dismissal. Record Document 13. Defendants now move for the dismissal of Relator's remaining claim pursuant to Rule 12(b)(6). Record Document 15.

## LAW AND ANALYSIS

### I. Legal Standard

In order to survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The court must accept as true all of the factual allegations in the complaint in determining whether plaintiff has stated a plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555 (2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678–79. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether plaintiff has pleaded a legally cognizable claim. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). A dismissal under 12(b)(6) ends the case "at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558.

## II. Applicable Law

"The purpose of the [FCA] . . . is to discourage fraud against the government, and the whistleblower[1] provision is intended to encourage those with knowledge of fraud to come forward." *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994). The "whistleblower" provision of the FCA provides:

> Any employee . . . shall be entitled to all relief necessary to make that employee . . . whole, if that employee . . . is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). For an FCA retaliation claim to survive a motion to dismiss, a plaintiff must show that (1) he engaged in protected activity, (2) his employer knew about the protected activity, and (3) he was retaliated against because of his protected activity. *U.S. ex rel. Bias v. Tangipahoa Parish School Bd.*, 816 F.3d 315, 323 (5th Cir. 2016) (citing *Robertson*, 32 F.3d at 951). For an employee's internal complaint to a superior to qualify as protected activity, the

---

[1] Here, the phrase "whistleblower provision" refers to 31 U.S.C. §3730(h), entitled "Relief from retaliatory actions."

3

complaint must concern "false or fraudulent claims for payment submitted to the government." *U.S. ex rel. Patton v. Shaw Servs., L.L.C.*, 418 Fed. Appx. 366, 372 (5th Cir. 2011) (citing *Robertson*, 32 F.3d at 952). Without knowledge that an employee was investigating fraud, an employer cannot possess the "retaliatory intent" that would establish a violation of § 3730(h)(1). *Id.* Although some circuits have adopted a broader interpretation of § 3730(h)(1)'s "protected activity" requirement, the Fifth Circuit continues to require a showing that an employee was attempting to expose fraud against the government. *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 515 (6th Cir. 2000); *see Patton*, 418 Fed. Appx. at 372; *U.S., ex rel. Johnson v. Kaner Med. Grp., P.A.*, 641 Fed. Appx. 391, 395 (5th Cir. 2016); *U.S. ex rel. Ligai v. ESCO Tech., Inc.*, 611 Fed. Appx. 219, 220–21 (5th Cir. 2015) (citing *Robertson*, 32 F.3d at 951).

Whether an employer had knowledge that a plaintiff was engaged in protected activity depends in part on the employee's job description. In *Robertson v. Bell Helicopter*, the Fifth Circuit found that the defendants could not have known that the plaintiff was engaged in protected activity because the plaintiff's actions were consistent with the performance of his job duties. 32 F.3d at 952. Plaintiff did not identify any change in his conduct that might have given the defendants notice of his intentions to report fraud upon the government. *Id.* To prove that an employee's engagement in protected activity caused a retaliatory action, a plaintiff cannot rely solely on temporal proximity of the retaliatory action to the protected activity. *U.S. ex rel. King v. Solvay Pharm., Inc.*, 871 F.3d 318, 334 (5th Cir. 2017). However, allegations of temporal proximity may be sufficient to overcome a motion to dismiss. *See id.* (quoting *Shackleford v. Deloitte & Touche, LLP,* 190 F.3d 398, 409 (5th Cir. 1999) ("Indeed, the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment.")).

### III. Arguments of the Parties

Relator alleges that she repeatedly raised concerns about Defendants' conduct to Bledsoe. Record Document 1, ¶s 61 & 64. Relator states that she sent an email to Bledsoe on December 14, 2016, that complained about the inappropriate admission of a dialysis patient to the Transitions Unit. *Id.* at ¶ 61. This patient was admitted based on an intake report prepared by a nurse instead of an examination by the attending physician. *Id.* Relator alleges that Bledsoe brushed her concerns aside and began to "belittle, harass, threaten and target her for unfounded criticism in front of her co-workers." *Id.* at ¶s 61–62. On January 30, 2017, Bledsoe held a meeting to inform Relator that certain regulations required that the Program Director of the Transitions Unit be either a licensed nurse or social worker and that Relator was "relieved of her duties." *Id.* at ¶ 63. Relator claims that no such regulation exists. *Id.*

In their motion to dismiss, Defendants argue that Plaintiff's allegations are insufficient to support a retaliation claim under the FCA. Record Document 15-2, p. 2. Defendants assert that Relator has not alleged with sufficient specificity what protected activity she engaged in or that her employer knew about this protected activity. *Id.* Defendants allege that Relator, by complaining that a dialysis patient was improperly admitted to the Transitions Unit, was "simply reporting her displeasure at her employer's action," which is not protected by the FCA. *Id.* at 4. Defendants also point out that the admission of this dialysis patient is the only specific event Relator provides in support of her retaliation claim. *Id.* Finally, Defendants assert that the issue of whether or not their conduct violated the FCA was resolved when Relator dismissed most of her FCA claims with prejudice. *Id.*

## IV. Analysis

To begin, the Court rejects Defendants' argument that they could not have reasonably known that Relator was engaged in protected activity because her FCA claims have been dismissed with prejudice and are therefore "finally adjudicated." *See* Record Document 15-2, p. 4. First, this argument is logically flawed because the dismissal of the majority of Relator's FCA claims necessarily occurred well after the termination of her employment. Second, this "final adjudication" occurred when Relator voluntarily dismissed most of her FCA claims. Record Document 13. The dismissed claims were never adjudicated on their merits. Third, even if those FCA claims had been dismissed on their merits, Relator would still be entitled to bring a retaliation claim against Defendants. *See U.S. ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996) ("[T]he case law is clear that a retaliation claim can be maintained even if no FCA action is ultimately successful or even filed."). Thus, the Court will evaluate whether Relator has successfully pleaded a retaliation claim under § 3730(h)(1).

### A. Sufficiency of Facts Alleged

This ruling turns on whether or not Relator engaged in protected activity, defined as either (1) actions taken in furtherance of an FCA claim or (2) actions taken in an effort to stop a violation of the FCA. 31 U.S.C. § 3730(h)(1). Relator's email to Bledsoe complained about the inappropriate admission of a dialysis patient into the Transitions Unit based on an intake report instead of a psychiatric evaluation performed by a doctor. Record Document 17, p. 3. Relator asserts that the admission of the dialysis patient violated the Center for Medicare and Medicaid Services' (CMS) reimbursement policy. *Id.* Relator states that CMS requires every patient admitted to an inpatient psychiatric facility to receive a psychiatric evaluation within sixty hours of admission. *Id.* According to Relator, the admission of a patient based on an intake report instead of a psychiatric

evaluation reflects a pattern of conduct by Defendants that was intended to increase CMS reimbursements by maintaining a high patient census regardless of medical needs, which gives rise to FCA liability. *Id.* Therefore, Relator contends that her email to Bledsoe counts as protected activity because it took place in a context where litigation was a distinct or reasonable possibility. *Id.* at 4 (citing *Mann v. Heckler & Koch Defense, Inc.*, 630 F.3d 338, 334 (4th Cir. 2010)).[2]

Relator has provided many details about Defendants' conduct and how that conduct allegedly violated the FCA. However, Relator has provided scant information in support of her own retaliation claim. Without additional facts, Relator's allegation that she engaged in protected activity does not state a claim upon which relief can be granted.

The Fifth Circuit has addressed the issue of protected activity under facts similar to the instant case. In *U.S. ex rel. Patton v. Shaw Services, L.L.C.*, the court held that Patton's complaints to his superiors about "fraudulent construction mistakes" did not qualify as protected activity. 418 Fed. Appx. at 372. The court found that the substance of Patton's complaints concerned allegedly unsafe or improper construction methods rather than fraud perpetrated on the government. *Id.* The court stated that "[m]ere criticism of Shaw's construction methods, without any suggestion that Patton was attempting to expose illegality or fraud within the meaning of the FCA, does not rise to the level of protected activity." *Id.* Similarly, Relator states that she complained about an improper admission at North Metro, but she does not state whether the email itself alleged fraud or illegality on the part of Defendants or merely claimed that Defendants were not complying with CMS regulations. The jurisprudence surrounding the FCA establishes that a plaintiff does not engage in protected activity when she complains of regulatory non-compliance without alleging

---

[2] The Court will not address, at this time, the extent to which the Fourth Circuit cases Relator cites in support of this argument may or may not conflict with Fifth Circuit case law regarding the standard used to evaluate whether protected activity occurred.

fraud on the government. *See U.S. ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 202 (4th Cir. 2018) ("These complaints did not merely express concern about regulatory non-compliance, but instead alleged specific illegal, fraudulent conduct against the government."). Without more information, the Court finds that Relator has not sufficiently alleged that she engaged in protected activity. *See Ligai*, 611 Fed. Appx. at 221 ("[A]lthough Slav Ligai repeatedly reported to his superiors ETS's allegedly substandard calibration practices, none of his reports contained 'any suggestion that [he] was attempting to expose illegality or fraud within the meaning of the FCA.'") (quoting *Patton*, 418 Fed. Appx. at 372).

### B. Relator is Granted Leave to Amend

Relator is given until **May 17, 2019**, to file an amended complaint to allege, if she can, facts to support all three elements of her retaliation claim. *See* Federal Rule of Civil Procedure 15(a)(2); *Dunn v. Koehring Co.*, 546 F.2d 1193, 1198 (5th Cir. 1977) (stating that leave to amend is to be freely given when justice so requires and that such leave is within the discretion of the trial court). It is not clear from the face of Relator's complaint (1) whether the contents of her email to Bledsoe alleged fraud against the government, and (2) whether she made any additional complaints to Bledsoe and/or Defendants other than the email described in her complaint. Relator is warned that the failure to plead sufficient facts will result in the dismissal of her claim.

### CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss [Record Document 15] is **DENIED WITHOUT PREJUDICE** to refiling. Relator is given leave to amend her complaint by **May 17, 2019**. If Relator fails to do so, the Court will dismiss her retaliation claim against Defendants and close this case.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 23rd day of April, 2019.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE